**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association; COMMUNITIES FOR A BETTER ENVIRONMENT, a non-profit corporation,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>LINDE, INC., a Delaware corporation,<br><br>　　　　Defendant. | Case No.: 2:24-cv-8849-SVW-RAO<br><br>**[~~PROPOSED~~] CONSENT DECRE** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** Plaintiff Communities for a Better Environment ("CBE" and collectively with LA Waterkeeper, "Plaintiffs") is an environmental justice non-profit 501(c)(3) organization organized under the laws of the State of California with local offices in Huntington Park and Wilmington, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** CBE is dedicated to empowering low-income communities of color that seek a voice in determining the health of their air, water and land;

**WHEREAS,** Defendant Linde Inc. ("Defendant") owns and operates a facility at 2006 East 223rd Street in Carson, California 90810, under Waste Discharger Identification number 4 19I013455 (the "Carson Facility") and a facility at 2300 E. Pacific Coast Highway in Wilmington, California 90744, under Waste Discharger Identification number 4 19I001017 (the "Wilmington Facility") (each of the Carson Facility and Wilmington Facility shall be referred to individually as a "Facility" and collectively as the "Facilities");

**WHEREAS,** the Facilities are each categorized under Standard Industrial Classification ("SIC") Code 2813, covering "Industrial Gases";

**WHEREAS,** storm water discharges associated with industrial activity at the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3)

Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facilities ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

   **WHEREAS**, Defendant's operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

   **WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

   **WHEREAS**, on March 26, 2024, Plaintiffs issued notices of intent to file suit as to each Facility ("60-Day Notice Letters") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S.

---

[1] Any references to the "General Permit" herein shall be to the then-effective version of the permit, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein.

Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

WHEREAS, on October 15, 2024, Plaintiffs filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No2:24-cv-8849 ("Complaint");

WHEREAS, Plaintiffs' Complaint alleged violations of the General Permit and the Clean Water Act based on the 60-Day Notice Letters;

WHEREAS, Defendant neither admits nor denies the allegations set forth in the 60-Day Notice Letters and the Complaint relating to the Facilities;

WHEREAS, Plaintiffs and Defendant (collectively, "Settling Parties" or "Parties"), without adjudication of Plaintiffs' claims or any admission of liability by Defendant, agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letters and Complaint without further proceedings;

WHEREAS, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place are located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     Plaintiffs have standing to bring this action.

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree.

## I.    OBJECTIVES

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Plaintiffs in their 60-Day Notice Letters and Complaint.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies ("Agency Review Period"), as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     <u>Court Notice</u>. Plaintiffs shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with Agency Review Period.

10.     <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiffs shall submit the Consent Decree to the Court for entry.

[PROPOSED] CONSENT DECREE

**B.    DEFINITIONS**

11.    Terms used in this Consent Decree which are defined in the General Permit, CWA, or regulations or rules promulgated under the CWA have the meaning assigned to them in the General Permit, statutes, regulations or rules. Additionally, whenever the terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

b.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

c.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the applicable Facility.

d.    "Effective Date" means the day this Consent Decree is approved and entered by the Court.

e.    "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) using the following search terms and/or URLs

i.    <u>Carson Facility</u>. "90810 Lincoln Village, Carson, CA, USA" available at https://forecast.weather.gov/MapClick.php?lat=33.8318&lon=-118.2242.

ii.    <u>Wilmington Facility</u>. "90813, Wilmington, Los Angeles, CA, USA" available at

https://forecast.weather.gov/MapClick.php?lat=33.781&lon=-118.2246.

f.  "Term" means the period between the Effective Date and the "Termination Date."

g.  "Termination Date" as to each Facility means the earliest of the following events:

    i.  June 30, 2028;

    ii.  June 30, 2026, if there have been no annual or instantaneous maximum NAL exceedances, as defined by the General Permit, since the Effective Date; or

    iii.  Five (5) days after Defendant provides Plaintiffs with notice of approval by the Regional Board of a Notice of Termination ("NOT") as that term is defined in the General Permit for the applicable Facility.

    iv.  Notwithstanding the foregoing, if any monetary requirements pursuant to Section III.E and F of the Consent Decree are still owing upon the trigger of the applicable event enumerated in Paragraphs 11.g.i-iii above, then the Consent Decree will terminate upon satisfaction of the monetary requirements.

    v.  Notwithstanding the foregoing, if any Dispute Resolution proceeding in accordance with Section IV of this Consent Decree is pending upon the trigger of the applicable event enumerated in Paragraphs 11.g.i-iii above, then the Consent Decree will terminate seven (7) days from either notice by the Settling Party that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute.

[PROPOSED] CONSENT DECREE

h.      "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> Defendant shall implement BMPs identified in the respective SWPPPs for the Carson Facility and Wilmington Facility and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

14.    <u>Rain Gauge/Sensor.</u> Defendant shall install and maintain electronic rain gauges or sensors at each Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, as applicable, except in the event of equipment malfunctions.

15.    <u>Structural and Non-Structural BMPs for the Facilities.</u> Defendant shall develop and implement the following BMPs at the Facilities:

a.      As soon as possible but no later than thirty (30) days of the Effective Date, patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facilities;

b.    As soon as possible but no later than thirty (30) days of the Effective Date, at the Carson Facility only, evaluate whether installation of berms, curbs, or similarly effective physical barriers is necessary to prevent storm water discharges from any point other than Discharge Points and, if so, install such berms, curbs, or similar physical barriers, as applicable;

c.    As soon as possible but no later than thirty (30) days of the Effective Date, at the Carson Facility, expand the footprint of the cooling tower berming to contain cooling tower drift and/or leaks;

d.    As soon as possible but no later than thirty (30) days of the Effective Date, at the Carson Facility, confirm additional gravel is added to landscaped areas in Drainage Area 3, as indicated in the Carson Facility's December 2023 Level 1 ERA Report;

e.    Implement a sweeping program (1) using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 µm) particles on accessible paved areas at least once per month outside of the Wet Season and once per week during the Wet Season at the Wilmington Facility, and twice monthly at the Carson Facility, and (2) employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

f.    Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials in storm water discharged from the Facilities, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers, complete rings, and/or overlapping formations. Defendant shall,

8

thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th;

g.    During the Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

h.    Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the site;

i.    Within twenty-four (24) hours prior to a Forecasted Rain Event, cover any exposed debris and scrap bins and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

j.    Store inutile or abandoned racks, vehicles, equipment, paint and waste scrap materials, if any, indoors or undercover; and

k.    Institute an equipment and vehicle maintenance program that ensures:

    i.    No maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facilities, *e.g.*, a forklift breaks down in a location that prevents ingress/egress;

    ii.    Maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

[PROPOSED] CONSENT DECREE

           iii.  When maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

Within fifty-two (52) days of the Effective Date, Defendant shall confirm to Plaintiffs in writing, with photographs where appropriate, that subparts a through d above were completed.

**B.    SAMPLING AT THE FACILITIES**

16.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from Qualifying Storm Events to the extent required by the General Permit. Defendant shall use best efforts to collect such samples during the first two (2) Qualifying Storm Events during scheduled facility operating hours and when conditions are safe in each half of the Reporting Year (or where the Facility has obtained a sampling frequency reduction certificate, during the first Qualifying Storm Event during scheduled facility operating hours and when conditions are safe in each half of the Reporting Year). If Defendant would have been required to collect samples during a precipitation event during scheduled operating hours but the precipitation event does not produce a discharge, or occurs during unsafe sampling conditions (i.e., dangerous weather conditions such as flooding or electrical storms), Defendant will collect photographic evidence of the lack of discharge or unsafe sampling conditions where feasible. Defendant shall submit such photographs, if any, to LA Waterkeeper at the email addresses listed below at Paragraph 57, along with rain gauge/sensor data for specific precipitation events or time frames, within fourteen (14) days of a written request for such records by LA Waterkeeper.

[PROPOSED] CONSENT DECREE

17.    <u>Sampling Parameters</u>. All samples collected in accordance with the General Permit and this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136.

19.    <u>Methods</u>. All QSE samples collected in accordance with this Consent Decree and the General Permit shall be analyzed using the methods specified in the General Permit. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

20.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all QSE samples collected at the Facilities to the Stormwater Multiple Application and Reporting Tracking System ("SMARTS") in accordance with the General Permit, and shall provide copies to LA Waterkeeper within fourteen (14) days of receiving the laboratory report with the results.

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Numeric Limits</u>.

**TABLE 1[2]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Aluminum, Total | 0.75 mg/L (annual) | General Permit NAL |
| Ammonia (as N) (only as to the Carson Facility) | 2.14 mg/L (annual) | General Permit NAL |
| Iron, Total | 1.0 mg/L (annual) | General Permit NAL |
| Nitrite + Nitrate (as N) | 0.68 mg/L (annual) | General Permit NAL |
| Oil & Grease | 15 mg/L (annual); 25 mg/L (instantaneous) | General Permit NAL |
| pH | < 6 or > 9 s.u. (instantaneous) | General Permit NAL |
| Total Suspended Solids | 100 mg/L (annual); 400 mg/L (instantaneous) | General Permit NAL |

22.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 has the same meaning as an Exceedance under the General Permit:

a.  For annual NALs, an Exceedance occurs when the average of all analytical results from all samples taken at a facility during a Reporting Year for a given parameter exceeds an annual NAL value listed in Table 1 above; or,

b.  For the instantaneous NALs, an Exceedance occurs when two or more analytical results from samples taken for any parameter within a Reporting Year exceed the instantaneous NAL value, or are outside of the instantaneous NAL range (for pH).

---

[2] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

23.     Action Plan. If storm water samples demonstrate an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the applicable Facility ("Action Plan").[3] The complete Action Plan shall be submitted to LA Waterkeeper by July 31 following the Exceedance (or June 30, 2028 if the Exceedance occurs during the 2027-2028 Reporting Year). If an Action Plan is required for both Facilities, Defendant may submit one Action Plan that addresses both Facilities.

a.     Action Plan Requirements. Each "complete" Action Plan submitted shall include at a minimum: (1) the identification of the Exceedance(s); (2) an explanation of the possible cause(s) and/or source(s) of each Exceedance; (3) the identification of any modified or additional BMPs that will be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within thirty (30) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall notify LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth in the Action Plan.

---

[3] The "Action Plan" discussed in this Consent Decree is a separate and distinct requirement from any "Action Plan" or Exceedance Response Actions discussed in the General Permit.

b. <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the applicable Facility's storm water discharges:

    i.   <u>Hydrologic Controls.</u> Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

    ii.   <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii.   <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    iv.   <u>Evaluation of Existing BMPs</u>. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c. <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented

14

pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other unrelated BMP(s) set forth in the Action Plan.

  d. <u>Action Plan Payments</u>. Action Plan Payments shall be included in the Compliance Monitoring Payment set forth in Paragraph 31, below.

  e. <u>Meet and Confer Following Exceedance of Instantaneous NAL</u>. If an Exceedance of an instantaneous NAL occurs at either Facility prior to December 31 of any Reporting Year, within fourteen (14) days of receipt of the laboratory report demonstrating the Exceedance, Defendant shall notify LA Waterkeeper of the Exceedance, and within thirty (30) days of such notification, the Parties shall meet and confer to discuss the adequacy of BMPs and possible modified or additional BMPs that may address the Exceedance. No Action Plan shall be required until July 31 following the Exceedance, as set forth above, but such Action Plan shall incorporate the substance of the Parties' meet and confer discussion.

**D.** **VISUAL OBSERVATIONS**

  24. <u>Storm Water Discharge Observations</u>. Defendant shall comply with the sampling event visual observation requirements set forth in Section XI.A.2 of the General Permit.

  25. <u>Monthly Visual Observations</u>. Defendant shall comply with the monthly visual observation requirements set forth in Section XI.A.1 of the General Permit

26. <u>Visual Observations Records</u>. Defendant shall maintain observation records, including representative photographs (as applicable), to document compliance with Paragraphs 24 and 25. Such records shall include the date, approximate time, locations observed, presence and probable source of any observed pollutants, name of person(s) that conducted the observations, and any response actions and/or additional SWPPP revisions necessary in response to the visual observations. Defendant shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

27. <u>Employee Training Program</u>. During the term of this Consent Decree, Defendant shall comply with all employee training requirements in the Facilities' SWPPPs and General Permit. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

28. <u>SWPPP Revisions</u>.

    a.   <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facilities' SWPPPs to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPPs to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.

    b.   <u>Additional SWPPP Revisions</u>.

        i.   Within thirty (30) days after completion of the Action Plan review process set forth in Paragraph 23 above (or resolution of any Action Plan dispute pursuant to Section IV below), Defendant shall revise the then-current SWPPP for the relevant Facility to reflect the changes required by the Action Plan and submit the complete, updated SWPPP

to LA Waterkeeper for LA Waterkeeper's review and comment.

ii. Within thirty (30) days after any material changes in sources of industrial pollutants that may affect the quality of industrial storm water discharges, changes to Discharge Points, changes in the relevant Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge, Defendant shall revise the then-current SWPPP for the relevant Facility to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c. <u>Review of SWPPP</u>. For any SWPPP updates pursuant to Paragraphs 28.a. and 28.b., LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP for the applicable Facility to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to a given SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to a given SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS to the extent required by the General Permit.

[PROPOSED] CONSENT DECREE

### E.    COMPLIANCE MONITORING AND REPORTING

29.    <u>Site Inspections.</u> LA Waterkeeper may conduct one annual site inspection ("Site Inspection") of each Facility during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event a site inspection would be relevant to resolving a Dispute Resolution proceeding invoked in accordance with Section IV of this Consent Decree, the Parties' shall use utilize the annual Site Inspection for resolving the dispute, where feasible, provided that the inspection shall not necessarily be limited to the area of the Facility relevant to the Dispute Resolution proceeding. Where utilization of the annual Site Inspection is not possible (*e.g.*, because the annual Site Inspection already occurred or the dispute-related site inspection must occur in specific weather), the Parties agree to meet and confer regarding a potential additional site inspection at the appliable Facility for purposes of resolving the dispute. Any Site Inspection shall occur during scheduled facility operating hours, and LA Waterkeeper will provide Defendant with as much notice as possible but at least forty-eight (48) hours' notice prior to a Site Inspection in anticipation of wet weather and at least seventy-two (72) hours' notice prior to a Site Inspection in anticipation of dry weather. For any Site Inspection requested to occur in wet weather, in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facilities in wet weather, the Parties shall meet and confer to adjust timing or reschedule during normal business hours without requiring an additional forty-eight (48) hours' notice.  Notice will be provided by telephone and electronic mail to the individual(s) designated below at Paragraph 57. During a Site Inspection during wet weather, LA Waterkeeper may request that Defendant collect a sample of industrial storm water discharge from the inspected Facility's Discharge Point, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA

Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative.

30.    <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

   a. Defendant shall provide LA Waterkeeper with a copy of all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at either of the Facilities that are submitted to the Regional Board or the State Board within seven (7) days of submission. Alternatively, if the submission to the Regional Board or State Board is made via SMARTS, Defendant may satisfy this requirement by providing notice to LA Waterkeeper via electronic mail that said results have been uploaded to SMARTS within seven (7) days of uploading said documents.

   b. Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at either of the Facilities received by Defendant from the Regional Board or the State Board shall be sent to LA Waterkeeper within seven (7) days of receipt by Defendant.

31.    <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with LA Waterkeeper's monitoring of Defendant's compliance with this Consent Decree, including but not limited to Action Plan payments required by this Consent Decree during the Term, by paying Thirty-Three Thousand Dollars ($33,000.00) within forty-five (45) days of the Effective Date. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" and delivered via certified mail,  return receipt requested to Los Angeles Waterkeeper, c/o Barak

Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial projects that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the San Pedro Bay watershed, and in recognition of the good faith efforts of Defendant to comply with all aspects of the General Permit and CWA, and in lieu of payments of any penalties, which have been disputed by Defendant but may have been assessed had this action been adjudicated in a manner adverse to Defendant, Defendant agrees to make a payment totaling Thirty Thousand Dollars ($30,000.00) to the Rose Foundation made within sixty (60) days of the Effective Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>Plaintiffs' Fees and Costs</u>. Defendant shall pay a total of Seventy-One Thousand Dollars ($71,000.00) to Plaintiffs to partially reimburse Plaintiffs for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall be made within forty-five (45) days of the Effective Date and made payable to: Lozeau Drury LLP and delivered by overnight carrier to Lozeau Drury LLP, Attn: Rebecca Davis, 1939 Harrison St., Ste. 150, Oakland, CA 94612. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed to Plaintiffs under this Consent Decree that Plaintiffs

have not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of the lower of 4% per year or the maximum rate permitted by applicable law. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

35.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

36.    <u>Informal Dispute Resolution</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

37.    <u>Formal Dispute Resolution</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

38.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. §</u>

1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

39.    <u>Plaintiffs' Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiffs, on their own behalf and on behalf of their officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letters and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.    <u>Defendant's Waiver and Release of Plaintiffs</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiffs, their officers and directors, from and waives all claims related to the 60-Day Notice Letters and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    Enforcement of this Consent Decree is Plaintiffs' exclusive remedy for any violation of its terms, including any subsequent violation of the General Permit, or any successor, modified, or replacement permits, occurring prior to termination of the Consent Decree.

42.    Nothing in this Consent Decree limits or otherwise affects the Parties' rights to address or take any position that they deem necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.   MISCELLANEOUS PROVISIONS

43.   <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signatures shall be deemed to be originally executed counterparts of this Consent Decree.

45.   <u>Authority</u>. The undersigned representatives for Plaintiffs and Defendant each certify that they are fully authorized by the Party whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.   <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51.    <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiffs within ten (10) days of any assignment.

56.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree

when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the email addresses listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiffs</u>:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: barak@lawaterkeeper.org
Email: ben@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

Tyler Earl
COMMUNITIES FOR A BETTER
ENVIRONMENT

<u>If to Defendant</u>:
Scott Press
Linde Inc.
10 Riverview Drive
Danbury, CT 06810
Scott.press@linde.com

Erik Liebrecht
Linde Inc.
10 Riverview Drive
Danbury, CT 06810
Erik.Liebrecht@linde.com

6325 Pacific Boulevard, Suite 300
Huntington Park, CA 90255
tyler@cbecal.org
Phone: (510) 302-0430 x116

With copies to:
Rebecca Davis
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
rebecca@lozeaudrury.com
Phone: (510) 836-4200

With copies to:
Erika Spanton
Beveridge & Diamond
600 University Street, Suite 1601
Seattle, WA 98101
espanton@bdlaw.com
(206) 315-4815

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.     If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT


Dated: ____October 21____, 2024         By: _____
                                             Bruce Reznik
                                             Executive Director
                                             Los Angeles Waterkeeper


Dated: __10/16/24__, 2024              By: _____
                                             Darryl Molina Sarmiento
                                             Executive Director
                                             Communities for a Better
                                             Environment


Dated: _____, 2024            By: _____
                                             Marcos Cuevas, Vice President,
                                             West Region
                                             Linde Inc.


APPROVED AS TO FORM

                                          LOZEAU DRURY LLP


Dated: ____October 21____, 2024        By: _____
                                             Rebecca Davis
                                             Attorney for Plaintiffs
                                             Los Angeles Waterkeeper and
                                             Communities for a Better
                                             Environment

[PROPOSED] CONSENT DECREE

BEVERIDGE & DIAMOND

Dated: _____, 2024          By: _____

                                          Erika Spanton
                                          Attorney for Defendant
                                          Linde Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiffs and Defendant.

Dated: _____          CENTRAL DISTRICT OF CALIFORNIA

                                         _____
                                          United States District Court Judge

[PROPOSED] CONSENT DECREE

1    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2  as of the date first set forth below.

3

4  APPROVED AS TO CONTENT

5

6

7  Dated: _____, 2024          By: _____

8                                             Bruce Reznik
                                            Executive Director
9                                            Los Angeles Waterkeeper

10

11  Dated: _____, 2024          By: _____

12                                            Darryl Molina Sarmiento
                                            Executive Director
13                                            Communities for a Better
                                            Environment
14

15  Dated: _____October 21_, 2024         By: _____

16                                            Marcos Cuevas, Vice President,
                                            West Region
17                                            Linde Inc.

18

19  APPROVED AS TO FORM

20
                                            LOZEAU DRURY LLP
21

22

23  Dated: _____, 2024          By: _____

24                                            Rebecca Davis
                                            Attorney for Plaintiffs
25                                            Los Angeles Waterkeeper and
                                            Communities for a Better
26                                            Environment

27

28

1          BEVERIDGE & DIAMOND

2

3

4   Dated: _____October 21_____, 2024          By: _____

5                                                  Erika Spanton
                                                   Attorney for Defendant
6                                                  Linde Inc.

7

8

9

10  **IT IS SO ORDERED.**
    **FINAL JUDGMENT**

11

12        Upon approval and entry of this Consent Decree by the Court, this Consent

13  Decree shall constitute a final judgment between the Plaintiffs and Defendant.

14

15

16  Dated: December 18, 2024          CENTRAL DISTRICT OF CALIFORNIA

17

18

19  _____

20  United States District Court Judge

21

22

23

24

25

26

27

28